UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KENNETH W. BLAND, JR., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-10-4535 |
| | § | |
| UNION PACIFIC CORPORATION, d/b/a | § | |
| UNION PACIFIC RAILROAD, | § | |
| | § | |
| *Defendant.* | § | |

## ORDER

Pending before the court in this age and religious discrimination case is a motion for summary judgment filed by defendant Union Pacific Railroad Company ("Union Pacific"). Dkt. 16. After review of the motion, the response, the relevant exhibits, and the applicable law, the motion for summary judgment is GRANTED IN PART AND DENIED IN PART for the reasons set forth below.

### I. Background

Plaintiff Kenneth W. Bland, Jr. ("Bland" or "plaintiff") has been employed by Union Pacific in its Signal Department since 1990. Plaintiff alleges that he has been discriminated against by Union Pacific since 2006 based on his age, religion, and in retaliation for filing charges of discrimination. Dkt. 11. More specifically, plaintiff alleges that he was subjected to age discrimination when he was denied overtime hours that were then given to younger employees, that younger employees were permitted to use company trucks for personal errands while he was not, that he was denied an educational opportunity (Electronic Technician School) because "it was more beneficial for the company to train a younger employee," and that he was denied meal reimbursements. *Id.* Plaintiff alleges that he was subjected to retaliation for complaints he made

concerning age discrimination by being denied overtime work on weekends, by being repeatedly threatened with termination, and when his territory was expanded in April 2010, which "more than doubled" his responsibilities. *Id.*

Plaintiff alleges religious discrimination because he was not allowed to drive his company truck to church on Wednesday nights. He also asserts that his name was removed from a weekend overtime "list" because he was not available for overtime during church on Sunday mornings. Finally plaintiff alleges that his supervisor harassed him by riding in his vehicle with him and having a Global Positioning System installed on plaintiff's truck. *Id.*

Union Pacific has filed a motion for summary judgment, and assumes for purposes of the motion that plaintiff has met his *prima facie* case with respect to his claims of discrimination, arguing instead that it has presented legitimate, non-discriminatory reasons for its actions. Union Pacific does, however, challenge whether plaintiff has made out a *prima facie* case of retaliation.

In support of its motion, Union Pacific relies largely upon the affidavit of plaintiff's ultimate supervisor, Bryant Wallace, who is older than plaintiff and, like plaintiff, is a Christian. Dkt. 16-6. Mr. Wallace asserts that plaintiff's age, religion, and filing of discrimination claims had nothing to do with any decision he made. *Id.* Wallace also states he would have been the manager who would have approved plaintiff's request to attend Electronic Technical School if plaintiff's immediate supervisor, Nour Aljijikli, had recommended plaintiff, but that plaintiff was not qualified for the school because he had neither taken nor passed "necessary academic tests to be considered." *Id.* Wallace states that he made the decision to discipline plaintiff for personal use of a company truck in April 2008, and also for falsifying an "Hours of Service" form in November 2009. *Id.* Overtime at Union Pacific is, Wallace asserts, governed by a Collective Bargaining Agreement, and decisions

regarding overtime assignments were not premised upon plaintiff's age, religion, or retaliation. Plaintiff's territory was changed in April 2010 due to a "larger reorganization," and, finally, Wallace denied plaintiff's request for reimbursement for "excessive" meal expenses, and offers as an example a claim by plaintiff for a $40 meal at Saltgrass Steakhouse. *Id*.

Union Pacific also attaches excerpts from plaintiff's deposition. Dkt. 16-1. When asked about the denial of overtime hours in favor of younger workers, plaintiff testified that he "can't give you exact dates" or even "an exact year" when the alleged denial of overtime occurred. *Id*. at 5. Further, plaintiff conceded that Union Pacific has a policy that its company vehicles are not to be used for personal use, but argued that "we're allowed to take it to the store and we're allowed to take it to the gym" and so he "does not see why" he was not allowed to drive his company truck to church. *Id.* at 6. Plaintiff testified that he filed a "time claim" through his union concerning each alleged instance when he believed he was improperly denied overtime, and that those claims are still pending. *Id*. at 7.

Plaintiff responded to the motion for summary judgment, and has presented an affidavit wherein he states that "the men over 40 years of age were all pulled off the [overtime] list and replaed with younger men." Dkt. 18-3 ¶ 3. In January and March 2008, plaintiff was "taken off of the weekend call-out list and replaced by an [unnamed] younger maintainer." *Id*. ¶ 7. Plaintiff asserts that younger employees "made more overtime" than he did. Nour Aljijikli, plaintiff's immediate supervisor as September 2007, who was 30 years old, is alleged to have subjected plaintiff to a level of monitoring that no other employee was subjected to. *Id*. ¶ 5, 7. Plaintiff asserts that the company policy against personal use of a vehicle was enforced against him, but not against any other employee. *Id*. ¶ 10. Plaintiff assets, in fact, that Aljijikli placed a GPS on

3

plaintiff's truck, which was later removed. *Id.* ¶ 6. Also, plaintiff contests Wallace's assertion about his qualifications—plaintiff states he *did* complete the necessary academic tests for additional training, but that Aljijikli, who would have had to recommend plaintiff for training before Wallace could approve his attendance, told plaintiff he "would not be of benefit to the company in years ahead and that [plaintiff] would not be attending the school." *Id.* ¶ 12.

## II. Analysis

### A. Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If

the moving party fails to meet this burden, then it is not entitled to summary judgment and no defense to the motion is required. *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting FED. R. CIV. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory

"bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

**B. Title VII and ADEA Legal Standard**[1]

Title VII of the Civil Rights Act of 1964 ("Title VII") makes it unlawful for an employer to discharge an employee because of his "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). The Age Discrimination in Employment Act of 1967 ("ADEA") promotes employment of older persons (over forty years of age) based on their ability rather than age and prohibits arbitrary age discrimination in employment. 29 U.S.C. § 621(b).

A plaintiff can prove intentional discrimination through either direct or circumstantial evidence. *See Urbano v. Continental Airlines Inc.*, 138 F.3d 204, 206 (5th Cir. 1998). Direct evidence is evidence which, if believed, proves the fact without inference or presumption. *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (citing *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)). When a plaintiff offers only circumstantial evidence, the *McDonnell Douglas* framework requires the plaintiff to establish a *prima facie* case of discrimination, which, if established, raises a presumption of discrimination. *See Rutherford v. Harris Cty., Tex.*, 197 F.3d 173, 179–80 (5th Cir. 1999) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S. Ct. 1817 (1973)). To establish a *prima facie* case, the plaintiff must show that (1) he is a

---

[1] The standards applicable to claims under the ADEA and Title VII are similar and, in this case, there is no need to distinguish between cases interpreting the two separate laws. *Smith v. City of Jackson*, 544 U.S. 228, 233-34, 125 S.Ct. 1536 (2005) (noting that a unanimous interpretation of a section of Title VII with the same language as the corresponding ADEA provision is "precedent of compelling importance").

member of a protected class, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) others similarly situated were more favorably treated or that the plaintiff was replaced by a non-minority. *Willis v. Coca Cola Enters., Inc.*, 445 F.3d 413, 420 (5th Cir. 2006) (quoting *Rutherford*, 197 F.3d at 184); *Jatoi v. Hurst-Eules-Bedford Hosp. Auth.*, 807 F.2d 1214, 1219 (5th Cir. 1987)).

If the plaintiff successfully establishes a *prima facie* case of discrimination, the employer must then produce a legitimate nondiscriminatory reason for its adverse employment decision. *Id.* Once the employer produces a legitimate nondiscriminatory reason, the presumption of discrimination dissipates and the burden shifts back to the plaintiff-employee to raise a genuine issue of material fact that the nondiscriminatory reason is merely pretextual in order to survive summary judgment. *Id.* To carry this burden, the plaintiff must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). A plaintiff may establish pretext by showing either (1) the reason offered by the employer is untrue, or (2) the reason is true, but the plaintiff's protected characteristic was a motivating factor in the adverse decision (the "mixed-motive" alternative). *Id.*; *Keelan v. Majestco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005). The plaintiff bears the ultimate burden of persuading the trier of fact, by a preponderance of the evidence, that the employer intentionally discriminated against him because of his protected status. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219–20 (5th Cir. 2001).

## C. Analysis - Age and Religious Discrimination Claims

As noted above, Union Pacific has effectively conceded the existence of a *prima facie* case of age and religious discrimination for purposes of this motion only by concentrating solely upon

legitimate, non-discriminatory reasons for the actions taken. Thus, the court will presume the existence of a *prima facie* case and determine whether Union Pacific has offered a legitimate, non-discriminatory reason for its actions and, if so, whether plaintiff has shown the reason is pretext for discrimination.

### 1. Personal use of the company truck - stopping at church.

The parties agree that Union Pacific has a policy that precludes personal use of a company truck. Thus, Union Pacific has offered a legitimate, non-discriminatory reason for not permitting plaintiff to stop at church while using his company truck. Plaintiff argues, however, that he has presented evidence of "arbitrary enforcement" of the rule because, as he said at his deposition, "[w]e're allowed to take it to the store and we're allowed to take it to the gym." Dkt. 16-1 at 6. In his affidavit, plaintiff asserts that "many other signalmen and other employees used their company trucks for personal use and personal errands" but he was "specifically prohibited from using [his] truck to make brief stops" at church on the way home from work. Dkt. 18-3 ¶ 16. Thus, plaintiff asserts he has raised a fact question about whether the policy "is enforced against all employees, or whether it was enforced in a discriminatory manner towards [plaintiff] because of his religion and age." Dkt. 18 at 10.

First, plaintiff's testimony at deposition is to the effect that all employees, including plaintiff, were allowed to stop at a store or a gym. The evidence submitted to the court does not contain any names or ages of individuals who were treated differently than plaintiff for purposes of raising an inference of discriminatory intent. Indeed, if the policy is, in fact, enforced in an "arbitrary" fashion as plaintiff asserts, it has no pattern or purpose, discriminatory or otherwise. Plaintiff's burden in this respect is not to show that the company's actions in enforcing the policy are entirely consistent. His

8

burden is to show that the proffered reason is pretext for unlawful discrimination. On the evidence presented, the only personal use of a company vehicle plaintiff was denied is for use at church on the way home from work. This evidence, without more, offers no support at all for an inference of age discrimination.

With respect to religious discrimination, plaintiff argues that if the company policy is ignored for stops at the store or the gym, bias against his Christian faith must be the basis for denying him use of the company truck to stop at church. The court does not believe such an inference can be made in this case. Plaintiff's ultimate superior responsible for enforcing the policy is, like plaintiff, a Christian. Plaintiff has not indicated that any statements were made about his religion, nor has he offered other evidence (e.g., employees of other faiths being permitted to use their vehicles for religious purposes) that would permit an inference that Union Pacific acted out of religious bias in enforcing its policy.

A party opposing summary judgment "must meet the movant's affidavits with opposing affidavits that set out specific facts showing an issue for trial." *Travelers Ins. Co. v. Liljeberg Ents., Inc.*, 7 F.3d 1203, 1206-07 (5th Cir. 1993). However, "conclusory allegations supported by a conclusory affidavit will not suffice to require a trial." *Shaffer v. Williams*, 794 F.2d 1030, 1033 (5th Cir. 1986). Here, the only support for plaintiff's claims of religious or age discrimination concerning the denial of personal use of the company vehicle is plaintiff's own, conclusory assertion that religious discrimination arises because "he doesn't see why he can't" use the company truck to stop at church. Plaintiff has failed to present evidence sufficient to rebut the legitimate, non-discriminatory reason for denying him personal use of his company vehicle for church and, accordingly, Union Pacific is entitled to summary judgment in this respect.

### 2.     Electronic school.

Plaintiff has presented evidence in the form of statements made to him by his direct superior, Ajijikli, that plaintiff's age was the reason he did not recommend plaintiff for additional electronics schooling. If Ajijikli had made the recommendation, Bryant Wallace would have had to approve it. Wallace asserts in his affidavit that plaintiff was not academically qualified for the schooling in any event, and would have been denied the educational opportunity for this reason. Plaintiff contests this fact, and asserts that he had completed all necessary testing. Plaintiff has, therefore, rebutted Union Pacific's proffered reason. Further, Ajijikli's statement concerning plaintiff's age provides a basis for inferring age discrimination, because the Fifth Circuit considers a remark to be probative of discrimination if it demonstrates discriminatory animus and was made by a person primarily responsible for the adverse employment action *or by a person with influence or leverage over the formal decision maker*. *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 351 (5th Cir. 2007) (citing *Laxton v. Gap Inc.,* 333 F.3d 572, 583 (5th Cir. 2003)). Here, Wallace was not involved in the decision-making process because Ajijikli's refusal to recommend plaintiff for schooling kept Wallace from having anything to approve. Therefore, the motion for summary judgment should be denied with respect to plaintiff's claim he was denied the opportunity for additional schooling on the basis of his age.[2]

### 3.     Overtime opportunities.

Plaintiff states that a "list" of employees available for overtime work was maintained, and that he and other older employees were removed from it. He also states that he was removed from the list

---

[2] As noted above, Union Pacific has not challenged plaintiff's *prima facie* case with respect to this claim in its motion for summary judgment. This, of course, does not prevent them from making such a challenge at trial.

10

when he indicated that he would not be available for overtime assignments on Sunday mornings when he attended church. Union Pacific does not contest either of these facts, but instead asserts that the "selection of employees like Mr. Bland for overtime is governed by the Collective Bargaining Agreement in place between Union Pacific and the Brotherhood of Railroad Signalmen." Dkt. 16-6 at 3. As noted above, Union Pacific is conceding that plaintiff has made out a *prima facie* case of discrimination for purposes of this motion. With respect to plaintiff's overtime claim, then, Union Pacific has conceded (for purposes of this motion only) that plaintiff was taken off of the overtime list and younger, non-christian employees were provided overtime opportunities that plaintiff was not. Union Pacific has not provided the collective bargaining agreement to the court and, therefore, the court cannot, from the evidence presented, determine whether the provisions of the agreement provide a legitimate, non-discriminatory reason for the overtime assignments at issue in this case. Thus, the motion for summary judgment should be denied with respect to plaintiff's overtime claims.

### 4. Failure to promote.

Union Pacific identifies what it believes to be a failure to promote claim in the amended complaint, and asserts that no such claim was made in plaintiff's EEOC filings. Dkt. 16 at 8. Plaintiff makes no response to this argument. The court does not believe a failure to promote claim is stated in the amended complaint but, to the extent that one is contained therein, Union Pacific's unopposed motion for summary judgment on that claim is granted.

### D. Retaliation Claims.

Title VII's anti-retaliation provision protects an employee who is discriminated against because he has "'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry.*

*Co. v. White*, 548 U.S. 53, 59, 126 S. Ct. 2405 (2006) (quoting 42 U.S.C. § 2000e-3(a)). To establish a *prima facie* case of retaliation, a plaintiff must show: (1) he engaged in protected activity; (2) he was subjected to an adverse employment action; and (3) a casual link existed between the protected activity and the adverse employment action. *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 1997). At a minimum, "in order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003) (citing *Medine v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001)). If the plaintiff makes a *prima facie* showing of retaliation, the burden of production shifts to the employer, which must "articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). "If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose. . . . To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer." *Id.*

    **1.**    ***Prima facie* case.**

The only challenge to plaintiff's *prima facie* case made by Union Pacific is to the "causal link." Dkt. 16 at 7. Plaintiff responds that there is a temporal proximity between the complaints he made to the EEOC and alleged adverse employment actions. Dkt. 18.[3] Union Pacific does not

---

[3] In his brief, and in support of his claim that actions were taken against him in retaliation for his EEOC filings, plaintiff argues that Aljijikli once said plaintiff "could file another charge with the EEOC, it doesn't matter to [him]." Dkt. 18 at 14. This alleged statement appears only in plaintiff's brief, and is not part of any factual submission made to the court. The court will not consider matters not made part of the evidentiary record.

dispute this timing issue, other than to note that alleged acts of discrimination occurred "both before and after" plaintiff's complaints. Dkt. 19 at 2.

The causal link required to meet the third prong of the prima facie case for retaliation "is not as stringent as the 'but for' standard." *Evans v. City of Houston,* 246 F.3d 344, 352 (5th Cir. 2001). The Fifth Circuit has stated that "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). A time lapse of five days is sufficient to provide the "causal connection" enabling a plaintiff to satisfy the third prong of the prima facie case of retaliation. *Evans*, 246 F.3d at 354. Furthermore, district courts in this circuit have found that a time lapse of up to four months is sufficient. *Weeks v. NationsBank, N.A.*, No. CIV.A. 3:98-CV-1352M, 2000 WL 341257, at *3 (N.D. Tex. Mar. 30, 2000) (citing *Garrett v. Constar Inc.*, No. Civ.A 3:97-CV-2575, 1999 WL 354239, at *5 (N.D. Tex. May 25, 1999)). Here, plaintiff has asserted retaliatory conduct beginning within a month of the filing of his first EEOC complaint. This temporal proximity is sufficient to satisfy the causation prong of plaintiff's *prima facie* case.

        **2.**        **Failure to rebut legitimate, non-retaliatory reasons.**

Union Pacific's assertion of the Collective Bargaining Agreement as a reason for taking plaintiff off of the call-out list for overtime fails for the same reason it failed with respect to plaintiff's age discrimination. The court cannot assess whether the agreement was the reason for the overtime assignments absent seeing the agreement itself. Likewise, plaintiff has rebutted the legitimate reason suggested for denying him an educational opportunity because he has presented a factual dispute concerning whether he was qualified for the electrician training or not.

Plaintiff also asserts that he was denied meal reimbursements in retaliation for his EEOC complaints. Wallace has indicated that he denied "excessive" requests for meal reimbursements, and plaintiff has presented no evidence contesting the excessiveness of the requests made. Thus, Union Pacific is entitled to summary judgment on the meal reimbursement portion of plaintiff's retaliation claim.

Lastly, plaintiff asserts that his new assignment in April 2010 to a greatly increased workload was in retaliation for his EEOC complaints. Union Pacific has presented evidence that this occurred during a "larger reorganization." Plaintiff contests this by asserting that the assignment of additional work is "disproportionate" that more than doubled his assignments. Dkt. 18-3 at 7. Although it is a close call, the court believes this is sufficient to raise an issue of fact concerning the motivation for the new work assignments. The motion for summary judgment is denied in this respect.

## CONCLUSION

After review of the motion for summary judgment filed by Union Pacific (Dkt. 16), the response, the relevant exhibits, and the applicable law, the motion for summary judgment is GRANTED IN PART AND DENIED IN PART as set forth with more particularity above.

It is so ORDERED.

Signed at Houston, Texas on January 26, 2012.

_____
Gray H. Miller
United States District Judge